Jason M. Ingber (SBN 318323)
Serach B. Shafa (SBN 358332)
**Ingber Law Group**
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
Tel: (213) 805-8373
E-mail: ji@jasoningber.com

Attorneys for Plaintiff
ALIZA WOLMARK

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALIZA WOLMARK, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HOTEL COLLECTION LLC d/b/a Hotel Collection; AROMA360 LLC; UNIVERSAL ACCOUNT SERVICING LLC; UGA FINANCE; and DOES 1-10, inclusive,**<br><br>**Defendant.** | Case No.: 2:25-cv-06613<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.   Plaintiff Aliza Wolmark brings this class action against Defendants Hotel Collection LLC, Aroma360 LLC, Universal Account Servicing LLC, and UGA Finance (collectively, "Defendants") for operating a deceptive scheme that tricks consumers into signing high-interest loans while believing they are merely enrolling in a "VIP subscription program" for luxury home fragrances.

- 1 -
**COMPLAINT**

2. Defendants operate a bait-and-switch scheme where they: (a) sell consumers an initial diffuser product; (b) immediately follow up with high-pressure sales calls describing a "VIP program" upgrade; (c) deceive consumers into signing retail installment credit agreements—essentially high- interest loans at 16.99% APR—while never disclosing the true nature of the transaction during the sales process; and (d) further conceal the fraud by billing consumers through completely different entity names, preventing them from recognizing the charges and delaying discovery of the deception.

3. This predatory lending scheme for luxury scented oils has harmed thousands of consumers nationwide who believed they were signing up for a simple subscription service but instead found themselves locked into three-year, non-cancellable loans that threaten their credit scores and financial wellbeing.

4. Despite numerous public complaints about their deceptive practices—including detailed victim accounts on Reddit such as "[US] PSA: Hotel Collection/Aroma360 + UGA Finance trapped me in a 3-year high-interest loan" and media coverage like "Miami-based home fragrance company called out by customers"—Defendants continue their fraudulent scheme, demonstrating willful disregard for consumer protection laws and the financial harm they inflict on their victims.

## PARTIES

5.  Plaintiff Aliza Wolmark is a natural person and citizen of California, residing in Los Angeles County, California.

6.  Defendant Hotel Collection LLC is a Florida limited liability company with its principal place of business at 2058 NW Miami Court, Miami, Florida 33127. Hotel Collection transacts business throughout California and the United States through its website and direct sales operations.

7.  Defendant Aroma360 LLC is a Florida limited liability company that operates in conjunction with Hotel Collection to market and sell home fragrance products. Upon information and belief, Aroma360 shares common ownership, management, and operations with Hotel Collection.

8.  Defendant Universal Account Servicing LLC ("UAS") is a Missouri limited liability company with its principal place of business at 603 East St., Ste. 301, Parkville, Missouri 64152. UAS services the retail installment contracts at issue.

9.  Defendant UGA Finance is the lending entity that finances the retail installment contracts. Upon information and belief, UGA Finance works in concert with the other Defendants to facilitate the deceptive lending scheme.

10.  Defendants Does 1 through 10 are sued herein under fictitious names.

1  Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint accordingly.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) there are at least 100 class members, as evidenced by numerous public complaints documented on consumer forums including Reddit posts detailing identical deceptive practices, media coverage confirming widespread consumer harm, and Defendants' systematic nationwide marketing scheme; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, as each retail installment contract averages $4,932 and affects hundreds if not thousands of consumers, with additional statutory damages under TILA of up to $1,000 per violation and treble damages under California law; and (c) Plaintiff, a California citizen, and many class members are citizens of states different from Defendants Hotel Collection LLC and Aroma360 LLC (Florida entities), Universal Account Servicing LLC (Missouri entity), and UGA Finance.

12. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq.

13. This Court has supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, and Defendants transact substantial business in this District.

## FACTUAL ALLEGATIONS

### A. THE DEFENDANTS' DECEPTIVE SCHEME

15. Defendants operate a coordinated enterprise designed to deceive consumers into entering high- interest loans under the guise of "VIP subscription programs" for luxury home fragrances.

16. The scheme operates in two stages. Stage One is the initial purchase, in which Defendants market and sell home fragrance diffusers through various channels, including online advertising, social media, and their websites, with these initial purchases appearing to be straightforward retail transactions. Stage Two is the deceptive upsell, in which, within days of the initial purchase, Defendants initiate aggressive outbound sales calls to consumers, often placed early in the morning or at other inconvenient times, pressuring consumers to "upgrade" to what sales representatives describe as a "VIP program."

17. During these high-pressure sales calls, Defendants' representatives engage in the following deceptive practices: (a) describe the program using

misleading terms like "VIP membership," "subscription plan," and "monthly scent deliveries"; (b) emphasize upgraded devices and exclusive benefits while concealing the true financial obligations; (c) create artificial urgency and time pressure to prevent deliberate consideration; (d) keep consumers on the phone and pressure them to sign contracts during fast-paced sales calls without allowing time to read the documents; (e) prevent consumers from reviewing document terms before signing; (f) affirmatively lie when consumers specifically ask about credit impacts; (g) never mention that this is actually a loan with a 16.99% interest rate; (h) never explain this is a multi-year financial obligation; (i) never mention third-party lenders or financing arrangements; and (j) never disclose that charges will appear on credit card statements from completely different entities than Hotel Collection or Aroma360.

18.   Most egregiously, when consumers specifically ask whether the program will affect their credit or require credit checks, Defendants' representatives are trained to say "no"—a deliberate lie designed to overcome consumer objections.

19.   To further conceal the true nature of the transaction, Defendants structure their billing so that charges appear on consumers' credit card statements from entities with completely different names than Hotel Collection or Aroma360. This deliberate obfuscation prevents consumers from recognizing the charges as

related to their "VIP program," delays discovery of the fraudulent nature of the transaction, creates panic when consumers see unexplained charges from unknown entities, makes it difficult for consumers to dispute charges or seek refunds, and adds another layer of deception to the overall scheme.

20. Only after consumers have signed do they discover they have entered into retail installment credit agreements—high-interest loans that cannot be cancelled without severe financial consequences.

21. Despite widespread public complaints about these deceptive practices—including detailed accounts on consumer forums and media coverage—Defendants continue their scheme unabated, demonstrating willful disregard for consumer protection laws.

22. The use of different entity names for billing demonstrates consciousness of guilt and intent to defraud. This practice serves no legitimate business purpose and is designed solely to prevent consumers from connecting charges to the Hotel Collection/Aroma360 "VIP program," delay or prevent chargebacks and disputes, create plausible deniability about the relationship between the companies, further the overall scheme to trap consumers in loans they don't understand, and violate fundamental principles of transparency and fair dealing in consumer transactions. This billing obfuscation is a critical component of Defendants' fraudulent scheme, as it prevents the very consumers who are

beginning to suspect they were deceived from taking timely action to protect themselves.

23. Upon information and belief, Defendants have created a web of interconnected entities specifically to obscure the true nature of their business and make it difficult for consumers and regulators to trace the fraudulent scheme. This corporate shell game is designed to create confusion about which entity consumers contracted with, make it difficult to pursue legal remedies, avoid regulatory scrutiny, and shift assets and liabilities between entities to avoid accountability.

### B. PLAINTIFF'S EXPERIENCE

24. In April 2024, Plaintiff purchased a Starter Kit diffuser from Defendants' website, believing she was making a simple retail purchase.

25. The next day, at approximately 8:00 AM, Plaintiff received an unsolicited sales call from Defendants' representative asking if she wanted to be "upgraded into VIP program."

26. During this call, Defendants' representative told Plaintiff the program consisted of an upgrade to a "penthouse device," monthly scent deliveries, and a "flat payment rate." The representative created a high-pressure atmosphere, rushing Plaintiff to make a decision and sign documents while still on the phone. At no point did the representative disclose that this was a loan or credit transaction, that the interest rate was 16.99% APR, that this created a 36-month financial

- 8 -
**COMPLAINT**

obligation totaling $4,932, that the transaction involved third-party lenders, that missing payments would result in fees and credit damage, or that the agreement could not be cancelled.

27. Believing she was enrolling in a simple subscription service, Plaintiff signed the documents presented during the call.

28. Only later did Plaintiff discover she had been deceived into signing a retail installment credit agreement with a 36-month term, 16.99% APR interest rate, monthly payments of $137, $30 NSF fees for any payment issues, late payment fees, no cancellation rights, and severe credit consequences for non-payment.

29. Even after the sale, Defendants continue the deception. In a December 31, 2024 email from Defendants' "concierge department," the transaction is still referred to as a "VIP oil plan" and "oil subscription"—never as the loan it actually is.

## C. THE HARM TO CONSUMERS

30. Defendants' deceptive scheme causes severe harm to consumers including: (a) financial harm, as consumers are locked into thousands of dollars in debt for luxury items they believed they could cancel; (b) credit harm, as non-payment results in negative credit reporting that can last seven years; (c) emotional distress, as consumers experience anxiety and distress upon discovering they were deceived; and

(d) loss of autonomy, as consumers cannot cancel or return products without severe consequences.

31. The scheme is particularly insidious because it targets consumers who have already demonstrated interest in Defendants' products, exploiting their trust to trap them in predatory loans.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action individually and as a class action on behalf of the following classes:

**National Class:** All persons in the United States who, within four years prior to the filing of this complaint, entered into a retail installment credit agreement with Defendants after being contacted by telephone and told they were enrolling in a "VIP program," "subscription," or similar program, without clear disclosure that they were entering into a loan.

**California Subclass:** All persons in California who, within four years prior to the filing of this complaint, entered into a retail installment credit agreement with Defendants after being contacted by telephone and told they were enrolling in a "VIP program," "subscription," or similar program, without clear disclosure that they were entering into a loan.

33. Excluded from the Classes are Defendants and their officers, directors, and employees; any entity in which Defendants have a controlling interest; and the legal representatives, successors, and assigns of any such excluded persons or entities.

34. **Numerosity:** The Classes consist of at least hundreds, if not thousands, of members, making joinder impracticable. The numerous public complaints and media coverage of Defendants' deceptive practices confirm the widespread nature of this scheme.

35. **Commonality:** Common questions of law and fact exist as to all Class members, including whether Defendants misrepresented loans as subscriptions, whether Defendants failed to make required TILA disclosures, whether Defendants' sales representatives lied about credit impacts, whether Defendants prevented consumers from reading contracts before signing, whether Defendants' conduct was unfair or deceptive, whether Defendants' conduct was part of a common scheme, and whether Class members are entitled to damages.

36. **Typicality:** Plaintiff's claims are typical of the claims of Class members, as all were subject to the same deceptive sales practices.

37. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel competent and experienced in class action litigation.

38. **Predominance:** Common questions of law and fact predominate over any individual questions.

39. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Violations of the Truth in Lending Act 15 U.S.C. § 1601 et seq.

## (On Behalf of Plaintiff and All Classes)

40. Plaintiff incorporates all preceding allegations.

41. The retail installment credit agreements at issue are "consumer credit transactions" under TILA.

42. Defendants are "creditors" under TILA as they regularly extend credit and either imposed the finance charge or participated in the decision to extend credit.

43. TILA requires clear and conspicuous disclosure of credit terms before consummation of a credit transaction.

44. Defendants violated TILA by failing to clearly disclose that the transaction was a credit transaction, failing to disclose the annual percentage rate before consummation, and failing to provide required written disclosures before consummation. Defendants further violated TILA by preventing consumers from reading required disclosures by pressuring them to sign during fast-paced phone calls, failing to properly identify the creditor by using different entity names for billing, and

misrepresenting the nature of the transaction. Additionally, Defendants affirmatively lied about credit impacts when directly asked and obscured required disclosures through deceptive sales practices.

45. These violations are willful, as evidenced by Defendants' continuation of these practices despite numerous public complaints documenting identical deceptive tactics.

46. As a result of these violations, Plaintiff and Class members are entitled to statutory damages, actual damages, and attorneys' fees under 15 U.S.C. § 1640.

## SECOND CAUSE OF ACTION

**Violations of California's Unfair Competition Law Cal. Bus. & Prof. Code § 17200 et seq.**

**(On Behalf of Plaintiff and California Subclass)**

47. Plaintiff incorporates all preceding allegations.

48. Defendants' conduct constitutes unlawful, unfair, and fraudulent business practices under the UCL.

49. **Unlawful:** Defendants' conduct violates TILA, EFTA, the California Consumer Legal Remedies Act, the California False Advertising Law, FTC guidelines on clear and conspicuous disclosures, and other consumer protection statutes.

50. **Unfair:** Defendants' practice of deceiving consumers into loans they believe are subscriptions is immoral, unethical, oppressive, unscrupulous, and

substantially injurious to consumers. The use of different entity names for billing compounds this unfairness by preventing consumers from identifying fraudulent charges and protecting themselves.

51. **Fraudulent:** Defendants' misrepresentations about the nature of their "VIP program" are likely to deceive reasonable consumers.

52. Plaintiff and Class members have suffered injury in fact and lost money as a result of Defendants' UCL violations.

53. Plaintiff seeks restitution, injunctive relief, and other equitable relief under the UCL.

## THIRD CAUSE OF ACTION

**Violations of California's Consumer Legal Remedies Act Cal. Civ. Code § 1750 et seq.**

**(On Behalf of Plaintiff and California Subclass)**

54. Plaintiff incorporates all preceding allegations.

55. Defendants' retail installment contracts are "goods" and "services" under the CLRA.

56. Plaintiff and Class members are "consumers" under the CLRA.

57. Defendants violated the CLRA by misrepresenting the characteristics and benefits of their services (§ 1770(a)(5)), representing their services as a particular standard when they were another (§ 1770(a)(7)), advertising services with no intent to

- 14 -
**COMPLAINT**

sell as advertised (§ 1770(a)(9)), misrepresenting the rights and obligations involved (§ 1770(a)(14)), and representing the transaction was supplied in accordance with previous representations when it was not (§ 1770(a)(16)).

58. Defendants' conduct was intentional, fraudulent, and designed to deceive consumers.

59. Plaintiff is concurrently serving Defendants with the required notice under Cal. Civ. Code § 1782 and seeks injunctive relief under the CLRA at this time. Plaintiff reserves the right to seek damages under the CLRA following compliance with the statutory notice requirements.

## FOURTH CAUSE OF ACTION

### Fraud and Deceit

### (On Behalf of Plaintiff and All Classes)

60. Plaintiff incorporates all preceding allegations.

61. Defendants made specific false representations of material facts to Plaintiff and Class members. For example, in April 2024, the day after Plaintiff's initial purchase, Defendants' representative called Plaintiff at approximately 8:00 AM and made the following false statements: (a) the program was a "VIP subscription" consisting of a "penthouse device," "monthly scent deliveries," and "flat payment rate"; (b) consumers were enrolling in a simple payment plan rather than a loan; (c) when Plaintiff specifically asked about credit impacts, the representative stated "no," the

transaction would not affect her credit; (d) no credit check would be performed; and (e) charges would appear from Hotel Collection or Aroma360, when in fact they appear from completely different entities.

62.   These representations were false, and Defendants knew they were false when made. The transaction was actually a 36-month retail installment credit agreement with 16.99% APR interest totaling $4,932, involved third-party lenders, would affect consumers' credit, and would result in charges from entities with different names than disclosed during the sales call.

63.   Defendants compounded their fraud by preventing consumers from discovering the truth. Specifically, during the April 2024 call with Plaintiff, Defendants kept her on the phone and pressured her to sign documents during the fast-paced sales call without allowing time to read them. Defendants further obscured the fraud by using different entity names for billing and continuing the deception even after the sale—as evidenced by Defendants' December 31, 2024 email to Plaintiff still referring to the transaction as a "VIP oil plan" and "oil subscription" rather than the loan it actually is.

64.   Defendants' fraudulent conduct is particularly egregious because they have continued their deceptive scheme despite numerous public complaints, including the Reddit post "[US] PSA: Hotel Collection/Aroma360 + UGA Finance trapped me in a 3-year high-interest loan" and media coverage in "Miami-based home fragrance

- 16 -
**COMPLAINT**

company called out by customers." This demonstrates Defendants acted with malice and conscious disregard for consumers' rights.

65. Defendants intended for Plaintiff and Class members to rely on these misrepresentations.

66. Plaintiff and Class members reasonably relied on these misrepresentations.

67. As a proximate result, Plaintiff and Class members have been damaged. The use of different billing entity names specifically caused additional damages by delaying consumers' ability to identify and stop the fraudulent charges, resulting in additional unauthorized payments being extracted from their accounts.

### FIFTH CAUSE OF ACTION

**Violations of the Electronic Fund Transfer Act**

**15 U.S.C. § 1693 et seq.**

**(On Behalf of Plaintiff and All Classes)**

68. Plaintiff incorporates all preceding allegations.

69. The Electronic Fund Transfer Act ("EFTA") and Regulation E require clear disclosures when establishing recurring electronic fund transfers.

70. Defendants violated EFTA by failing to clearly disclose the identity of the financial institution or entity that would charge consumers' accounts, using different entity names for billing than those disclosed during sales calls, failing to provide

required written authorizations before initiating recurring transfers, and misrepresenting the nature of the recurring charges.

71. As a result of these violations, Plaintiff and Class members are entitled to actual damages and statutory damages under 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court:

A. Certify this case as a class action and appoint Plaintiff as Class Representative and her counsel as Class Counsel;

B. Award actual damages, statutory damages, and punitive damages to the fullest extent permitted by law;

C. Award punitive damages in an amount sufficient to deter Defendants from continuing their fraudulent scheme, particularly given their willful continuation of these practices despite numerous public complaints;

D. Award restitution and disgorgement of ill-gotten gains;

E. Enjoin Defendants from continuing their deceptive practices, including through preliminary injunction given the ongoing harm to consumers;

F. Order Defendants to clearly disclose the actual billing entity names during sales calls and in all marketing materials;

G. Order expedited discovery given the ongoing harm to consumers as evidenced by continuing public complaints;

H. Award pre-judgment and post-judgment interest;

I. Award reasonable attorneys' fees and costs;

J. Grant such other relief as the Court deems just and proper.

# **DEMAND FOR JURY TRIAL**

Plaintiff ALIZA WOLMARK hereby demands a trial by jury on all issues and causes of action so triable in this matter, pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

Respectfully submitted,

Dated: July 18, 2025                          INGBER LAW GROUP

                                              */s/ Jason M. Ingber*
                                              Jason M. Ingber, Esq.
                                              Attorney for Plaintiff

**COMPLAINT**